# United States Bankruptcy Court
## EASTERN District of California

In re: TOWN & COUNTRY WEST LLC   Case No. 24-24493

Debtor

Small Business Case Under Chapter 11

## TOWN & COUNTRY WEST, LLC'S PLAN OF REORGANIZATION DATED December 21, 2024

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay all bona fine creditors of TOWN & COUNTRY WEST LLC (the "Debtor" / "WEST") from the sale of Debtor's real properties[1] located at 2961 Fulton Avenue, Sacramento, CA 95821 ("Fulton") in the West case and 11354 White Rock Road, Rancho Cordova, CA 95742 ("White Rock") (collectively, the "Properties") on or before **APRIL 15, 2025**. A summary of the debt(s) / categories:

1. FOUR (4) classes of secured impaired claims in Class 1 (Classes 1A through Class 1D);
2. SIX (6) unsecured creditors in Class 2, and
3. One (1) equity security holder in Class 3.

Creditors in Classes 1A to 1D and Class 2 will receive 100% (full claim amount) distributions.

This Plan also provides for the payment of some administrative and priority claims in full upon the sale of the Property (barring some payments needing Court approval as discussed infra). All creditors and equity security holders should refer to this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

---

[1] On December 12, 2025 under Dkt. Nos. 51 and 53, secured creditors Private Mortgage Fund, LLC and Qualfax, Inc. (with cross-collateralized interests) and the West Debtor and Event Center Debtor have submitted a stipulation for Fulton and White Rock to be listed for sale no later than 7 days after the entry of order approving the stipulation. The stipulation states Fulton shall be listed for $16,000,000.00 and White Rock for $7,000,000.00 to facilitate quick market interest. While West Debtor and Event Center Debtor will give priority to the terms of the stipulation, each Debtor believes the respective Schedules A affirm higher bids may likely be obtained for each property. Consequently, the Debtor envisions the sale of Fulton realizing sufficient funds to pay off all claims in both cases without the sale of White Rock.

# ARTICLE II
# CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 **Unclassified Claims (**Administrative Claims; Priority Tax Claims Under Section 507(a)(8); and Priority Unsecured Claims (Sections other than 507(a)(8))

2.2 **Class 1.** SECURED CLAIMS.

Class 1A: Private Mortgage Fund, LLC (1st DOT)

Class 1B: Qualfax, Inc. c/o RTI Properties, Inc. (2nd DOT)

Class 1C: Sacramento County Tax Collector (Property Tax Lien)

Class 1D: Sacramento County Utilities (Utility Lien)

2.3 **Class 2**. GENERAL UNSECURED CLAIMS.

2.4 **Class 3**. Equity interests of the Debtor

# ARTICLE III
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.1. Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan except for those administrative claims (e.g., attorney's fees) which require a motion for approval and Court order.

3.2. Priority Tax Claims. Each holder of a priority tax claim will be paid pursuant to the requirements of the Code.

3.3. United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1 Claims and interests shall be treated as follows under this Plan:

**CREDITOR NAME AND BALANCE OWED**     **Impaired?**     **Payoff Date / Terms**

| | | |
|---|---|---|
| **Class 1A[2]** --<br>Private Mortgage Fund, LLC<br>c/o FCI Lender Services, Inc.<br>P.O. Box 27370<br>Anaheim, CA 92809<br>Acct. No. 1046<br>(1st DOT)<br>(Balance: $13,359,014.83) | Impaired | Debtor will refi or sell the Properties by APRIL 15, 2025, paying Class 1A from the proceeds of the sale. Debtor will file a motion for approval if appropriate. |
| **Class 1B –**<br>Qualfax, Inc. c/o RTI Properties, Inc.<br>19300 S. Hamilton Avenue, Suite 210<br>Gardena, CA 90248<br>Acct. No.<br>(2nd DOT)<br>(Balance: $3,103,637.07) | Impaired | Debtor will refi or sell the Properties by APRIL 15, 2025, paying Class 1B from the proceeds of the sale. Debtor will file a motion for approval if appropriate. |
| **Class 1C –**<br>Sacramento County Tax Collector<br>P.O. Box 508<br>Sacramento, CA 95812-0508<br>(Property Tax Lien)<br>($452,019.00 for one parcel and $20,000.00 for another) | Impaired | Debtor will refi or sell the Properties by APRIL 15, 2025, paying Class 1C from the proceeds of the sale. Debtor will file a motion for approval if appropriate. |
| **Class 1D –**<br>Sacramento County Utility<br>P.O. Box 1804<br>Sacramento, CA 95812<br>(Balance: $2,100.00) | Impaired | Debtor will refi or sell the Properties by APRIL 15, 2025, paying Class 1D from the proceeds of the sale. Debtor will file a motion for approval if appropriate. |
| **Class 2 – General Unsecured Creditors**<br>1. Manzar Qayyum ($128,813.00)<br>2. Sacramento Suburban Water District ($4,068.94)<br>3. PG&E ($9,805.89)<br>4. FTB ($7,588.15)<br>5. WF Small Business Lending Division ($3,176.63)<br>6. U.S. Small Business Administration ($146,932.14) | Impaired | Debtor will refi or sell the Properties by APRIL 15, 2025, paying all claims in Class 2 from the proceeds of the sale. Debtor will file a motion for approval if appropriate. |
| Class 3 -- Equity Interest Holders (WAQAR KHAN, 100%) | Unimpaired | Class 3 shall be entitled to the net funds after sale and necessary expenses and plan payments. |

**ARTICLE V**

---

[2] The Debtor and this Creditor (1st DOT, Class 1A), as well as the 2nd DOT Holder in Class 1B, entered into a Stipulation for Adequate Protection (and Chapter 11 Plan Treatment) on December 12, 2024, at dkt. #'s 51 and 53. If approved by the Honorable Court, the terms of said agreements shall control in the event of any conflict between it and the Chapter 11 Plan.

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1     Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2     Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3     Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     Assumed Executory Contracts and Unexpired Leases.

(a)     The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of the Plan: **any and all leases listed on the Debtor's Schedule G / that are in effect that are term of year leases and not month to month.**

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1     Means for Implementation. Debtor will sell the Properties by **APRIL 15, 2025**, paying the above creditors from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days' notice to lien holders unless the Plan is confirmed prior to the sale.  In that case, the Debtor will provide the title company handling the transaction a copy of the Plan and the confirmation order to allow the transaction to close without a Motion.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1     Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: **NONE.**

8.2     Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first

business day after the date on which the stay of the confirmation order expires or is otherwise terminated. **Note: as this is a "SALE" Plan, the Plan may be confirmed and the Effective Date will occur but no payments other than the U.S. Trustee Fees will be paid on the Plan's Effective Date as the Sale of the Properties and the proceeds therefrom will be the funds used to pay all claims in this case (Classes 1 and 2) as discussed throughout.**

   8.3 <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

   8.4 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

   8.5 <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

   8.6. <u>Default Provisions.</u> Remedies if Debtor Defaults in Performing the Plan and Retention of Jurisdiction

   a) **Creditor Action Restrained.** The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part (e) below.

   b) **Obligations to Each Class Separate.** Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each nondebtor party to an assumed executory contract or lease shall be considered to be a separate class.

   c) **Material Default Defined.** If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

      d)      **Remedies Upon Material Default.**  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

      e)      **Claims not Affected by Plan.**  Upon confirmation of the Plan, any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

      f)      **Effect of Conversion to Chapter 7.**  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

      g)      **Retention of Jurisdiction.**  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court; (iv) whether the case should be dismissed or converted to one

## ARTICLE IX
## NO DISCHARGE OF DEBTOR

    9.1    No Discharge.  In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

Dated: December 27, 2024

                            Respectfully submitted,

                        By: /s/ Waqar Khan  
                            Responsible Person for  
                            The Plan Proponent

                        By: /s/ Arasto Farsad  
                            Arasto Farsad  
                            Attorney for the Plan Proponent